**W. A. MADDOX, Appellant,**

v.

**OLDHAM LITTLE CHURCH FOUNDA-TION, Appellee.**

**No. 251.**

Court of Civil Appeals of Texas.

Tyler.

Jan. 26, 1967.

Rehearing Denied Feb. 16, 1967.

Clayton, Kolander, Moser & Templeton
Cleo G. Clayton, Jr., Amarillo, for appellant.

Morris, Termini, Harris, McCanne &
Lacas, John C. Harris, Jr., Houston, for
appellee.

MOORE, Justice.

This is an appeal from a summary judgment for the plaintiff on a promissory note and denying defendant any relief upon his affirmative defenses and cross action.

Plaintiff, Oldham Little Church Foundation, hereinafter referred to as "Oldham," brought suit upon a $5,000.00 promissory note executed on December 8, 1958, by defendant, Dr. W. A. Maddox, hereinafter referred to as "Maddox." The note sued upon was a renewal note renewing a note theretofore executed by Maddox as part payment for the purchase price of land purchased from Oldham. Defendant Maddox answered with an unsworn general denial and by way of a cross action alleged that on September 8, 1952, prior to the purchase of the land, he entered into a contract with Oldham, under the terms of which the parties agreed to an exchange of certain lands and agreed to furnish each other with a complete abstract of their lands; that he, Maddox, delivered a complete abstract to

his lands but that plaintiff Oldham, though representing that it was delivering a complete abstract, failed to furnish a complete abstract of the title to its property, which fact he, Maddox, did not learn until long after the exchange; that when he attempted to trace the mineral interest to the Cooper-Neel tract of land, he found that Oldham had failed to furnish a complete abstract; that by reason of the breach of the agreement, he was obliged to spend $6,000.00 in procuring a complete abstract; that when he finally secured a complete abstract, he discovered for the first time that Oldham did not own all the minerals that it represented to own and as a result, defendant suffered damages in the amount of $10,000.-00. His prayer was for judgment over and against Oldham for his damages for breach of the contract and for general relief.

In reply to the cross action, Oldham filed a supplemental petition alleging that at the time of the execution of the renewal note on December 8, 1958, the defendant had full knowledge of the fact that the deed did not convey the mineral estate under the Cooper-Neel tract and that by the execution of the renewal note, with full knowledge of the condition of the title, defendant waived any defense which he might have to such note. Oldham also alleged that the cross action was barred by the statutes of limitation.

Oldham then filed a motion for summary judgment under the provisions of Rule 166–A, Texas Rules of Civil Procedure, alleging there was no genuine issue upon any material fact because the note upon which plaintiff's suit is based shows on its face that it is a renewal note; that the original indebtedness which this note renewed arose out of a transaction which was consummated in 1952 and that all defenses alleged in the answer of defendant were waived because at the time of the execution of the new note, the defendant had full knowledge of all of the facts pleaded in his answer as a defense to the plaintiff's cause of action, and that the cross

action alleged by the defendant was barred by the statutes of limitation.

The motion was accompanied by numerous affidavits and exhibits.

Defendant Maddox resisted the motion for summary judgment by filing an unsworn pleading alleging that there were numerous genuine issues as to material facts which were in dispute and in support thereof, attached the affidavits of defendant, W. A. Maddox, and a witness, W. H. Powell.

■ Certain rules have been firmly established to govern dispositions of appeals from summary judgments. Summary judgments disposing of the entire action upon its merits are proper when, but only when, the trial court, on motion therefor, is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law; all doubts as to the existence of a genuine issue as to a material fact must be r solved against the movant. Hunley v. Garber, (Tex.Civ.App.) 254 S.W.2d 813; Zapffe v. McElroy, (Tex.Civ.App.) 364 S.W.2d 299. A genuine issue of fact is raised, so as to preclude a summary judgment, when the facts alleged, if proven, constitute a legal defense, King v. Rubinsky, (Tex.Civ.App.) 241 S.W.2d 220, or where the defendant files a counter claim which raises material issues of fact which are in substantial dispute.

■ The courts normally look to the pleadings to determine the issues that may exist in the case, but if the depositions, admissions or affidavits disclose facts which show that the position of the moving party is untenable, summary judgment should be denied regardless of defects which may exist in the pleadings of the opposite party. Where facts appear in affidavits which would justify an amendment of the pleadings, such amendment should not be prevented by the entry of a summary judgment. Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233.

Thus in determining whether the plaintiff has discharged its burden of proof of showing that there is no genuine issue as to a material fact upon the whole case, the trier of the fact is not permitted to rest his judgment upon the pleadings alone, but is required to pierce the formal allegations of facts in the pleadings and examine all the testimony in the record and determine (1) whether the evidence is sufficient to establish the claim asserted by the plaintiff; (2) whether the evidence introduced by the defendant creates a dispute of a material fact upon some element of the plaintiff's claim or (3) whether the evidence raises a genuine issue as to a material fact created by the defensive matters asserted by the defendant or (4) whether the evidence offered on the cross action asserted by the defendant raises a material issue of fact. Gulf, Colorado & Santa Fe Railway Company v. McBride, 159 Tex. 442, 322 S.W.2d 492.

In support of the motion for summary judgment, plaintiff offered affidavits showing that at the time of the purchase of the land in 1952, Dr. Maddox executed his promissory note in the amount of $25,000.00 as a part of the purchase price. Thereafter, from time to time, payments were made on the note until it was reduced to the amount of $10,000.00. On December 8, 1956, Dr. Maddox executed a new note for the sum of $10,000.00. On December 6, 1957, he paid the sum of $2,500.00, together with the interest, leaving the balance due in the amount of $7,500.00. On December 8, 1958, when the note became due, Maddox paid the sum of $2,500.00, with interest, and requested an extension of time on the payment of the remaining $5,000.00. Oldham granted his request and permitted him to execute a new note in the amount of $5,000.00, dated December 8, 1958, which note is the subject of this litigation. The affidavits further show plaintiff to be the present owner and holder of the note; that the same was due, owing and unpaid and had been placed in the hands of an attorney for collection. Maddox did not deny the execution of the note. It therefore appears that the plaintiff is entitled to a summary judgment upon the note, unless the evidence offered by the defendant Maddox raises a genuine issue of fact in connection with the defenses asserted by him or a genuine issue of fact upon his claim for affirmative relief.

The defenses relied upon by Maddox are set forth in his affidavit which shows that prior to the sale, the parties entered into a written contract wherein Oldham agreed to convey to Maddox 33,668 acres of land, including 100% of all mineral rights thereon, for the agreed consideration of $450,500.00; that Oldham also agreed to furnish him with a complete abstract showing merchantable title; that prior to the purchase, Oldham furnished him an abstract and represented the same to be a complete abstract; that the abstract was not complete in that it omitted instruments of record relating to the minerals under a 6,000-acre tract known as the Cooper-Neel tract; that on December 2, 1952, after the abstracts pertaining to the transaction had been examined, a warranty deed to the property was prepared by Mr. John C. Harris, attorney for Oldham; that when the deed was presented to him, due to the lengthy description of the property, he asked Mr. Harris if the deed conveyed all that was agreed to be conveyed under the contract and he says that both Mr. Harris and Mr. Oldham assured him that it did; that in reliance upon these representations, he accepted the deed and it was not until after he had executed the $5,000.00 renewal note in question that he learned that the abstract was incomplete and that the deed did not convey to him the minerals under the Cooper-Neel tract; that in order to clarify the ownership of the mineral estate, he was required to expend the sum of $6,500.00; that because of the fact that the deed failed to convey all the mineral rights the parties had agreed to convey, he refused and still refuses to pay the note.

The written contract entered into by the parties agreeing to the exchange of their

properties contained the following pertinent provisions:

"* * *

"* * * The above consideration also includes the conveyance of 100% of all mineral rights on said 33,668 acres, * * *.

"* * *

"* * * each party hereto agrees to furnish the other with a complete abstract of the property to be conveyed showing merchantable title to his property * *.

"Within ten days from the receipt of abstract, the party receiving same shall accept title or return abstract with written objections thereto. Failure to comply with this provision shall be construed as an acceptance of the title.

"* * *

"When title objections have been cured, each party agrees to deliver a good and sufficient warranty deed properly conveying his property to the other * *."

The deed consummating the sale, dated December 6, 1952, conveyed numerous tracts of land, among which was the Cooper-Neel tract. Immediately following the field notes describing the 6,000-acre Cooper-Neel tract, the deed recited as follows:

"Subject to * * * the terms of that certain deed, made, executed and delivered by the Arlington Land Company to the Mosota Land Company, which said deed is dated March 6, A.D., 1914, and was filed for record on the 22nd day of April, A.D., 1919, in the office of the probate clerk and ex-officio recorder of the County of Rio Arriba in the State of New Mexico, and duly recorded in the 23rd day of April, A.D., 1919, in Vol. 21-A, of records in said office at page 225-226, *in which said deed reservations are made of all minerals on the premises hereinbefore described and of which said deed and the contents thereof and grantee herein has accepted and acknowledged*

*actual and complete knowledge."* (Emphasis supplied).

The deed also contained a covenant of warranty, warranting title to the land conveyed under and by virtue of the terms of the deed.

The sworn pleadings, affidavits and exhibits filed by the plaintiff, Oldham, assert that the abstract which was furnished Dr. Maddox contained a deed to the Cooper-Neel tract showing that Oldham did not own the minerals because of the reservation in previous deeds. Maddox does not deny that the abstract contained a deed to the Cooper-Neel tract showing the previous reservation of the minerals by plaintiff's predecessors in title. He says only that some of the deeds relating to the minerals on the Cooper-Neel tract were omitted from the abstract.

Plaintiff also attached to its affidavits a letter from Dr. Maddox dated December 5, 1957, addressed to Mr. John C. Harris, Jr., attorney for Oldham. The letter, in part, reads as follows:

"Dec/5/1957

"Dear Mr. Harris;—
"I received a letter from Mrs Florence Oldham asking that I mail you a copy of Simms, Modrall, Seymour & Roehl, opinion relative to the Mineral interst in the Cooper-Neal tract compsoed of some 6000 acres more or less out of the south portion of waht is comonly know as the El Poso Ranch in Rio Arrabia County N.M. formely owned by Mr M. C. Oldham, or Little Church foundation, which was founded my Mr Oldham now deceased.

"The No ONE copy in red, is a exact copy of the opinion partaining to the Cooper-Neal tract, only, which was or is an extract out of the entire opinion partaining to the entire ranch, 1 am asuming that the portion regarding their opinion on the tract involved is all that you will nead.

"The No (2), Copy is a letter signed by Wilson Hurley, who examined the title on the El Poso ranch or Oldham lands, all the way through, this firm of Albuquerque Lawyers, examine over 75 percent of all N.M. Titles for all Loan Co in the entire state and have a enviable repetition.

"At my request. Wilson Hurley wrote the firm of lawyers, in Tucumcaris, N.M. of Rowley, Breen and Bowen who 1 have employed to see if the can clearify the mineral interst, on said Cooper-Neal tract.

"I will have to admit that Wilson seams to doubt his own opinion, to the Oil Co that was leasing said ranch, but at the same time the Albuquerque firm of Lawyers will not pass the lands involved under the Cooper-Neal tract, untill it has been cleared by a Suit to Quiet title.

"The sixty-four dollar question is, can the mineral interst be clear up, by this suit??????, I am sure that Mr, Breen of Tucumcari, will me more than glad to accept any information, that you or the Oldham estate has in their posetin that could possibly be used in this fourth coming suit to Quiet the title on Minerals only.

"Again wishing to thank you, and asuring you of our corporation in the matter I am,

"Yours very truly
"/s/ W. A. Maddox
"Dr. W. A. Maddox"

The "No ONE copy in red," which was enclosed in the letter is a title opinion upon the Cooper-Neel tract. The opinion reads in part as follows:

"The Cooper-Neel tract, however, presents a different problem. This tract was also subject to the conveyance of minerals to Mosoto by Arlington Land Company. On the face of the deed, as it appears in the abstract examined, which abstract was prepared by the Rio Arriba County Title Abstract Company and was certified to the 20th day of December, 1938, said deed appearing on page 75 thereof, is the following: 'The abstractor has not in. this abstract followed the transactions, if any, of the Mosoto Land Company involving the above mineral rights.' * * * "

The opinion further states that in all previous conveyances of the Cooper-Neel tract, the parties appear to have conveyed the land in accordance with the descriptions and reservations contained in previous deed, which previous deeds have the mineral reservations under the deed from Arlington Land Company to Mosota Land Company set forth, and the opinion then adds:

" * * * This is true up to the present time, and such a reservation is found in the warranty deed of December 6, 1952 from the Oldham Little Church Foundation to William A. Maddox, * * * "

The "No (2), Copy," which is attached to Dr. Maddox's letter, is likewise a title opinion. In this opinion, the attorney says that the only evidence of ownership of the minerals under the Cooper-Neel tract, which he could find, was the conveyance out to Mosota Land Company forty-three years ago, and in his opinion the title to the minerals remained in it. He also states in effect that the various deeds conveying the Cooper-Neel tract contained an unequivocal reservation of the minerals.

Dr. Maddox does not deny the letter or the contents thereof nor that the letter contained copies of the title opinions referred to above. It is significant to note that neither in this letter nor at any other time prior to this suit, did Dr. Maddox complain of the fact that the deed did not convey the minerals under the Cooper-Neel tract.

On this appeal, Maddox contends that his pleadings and affidavits raised issues of fact upon his defensive plea of fraud

and failure of consideration, as well as issues of fact on his cross action for damages, and therefore the rendition of the summary judgment against him was improper. Oldham, on the other hand, contends that those defenses were waived when Maddox executed the renewal note with full knowledge of the fact that the title was defective, or with full knowledge of the fact that the deed did not convey the minerals under the Cooper-Neel tract. Therefore, the first question before us is whether the sworn pleadings, affidavits and exhibits offered by the parties establish as a matter of law that Maddox waived his defenses.

▪ We have concluded that Maddox waived his defenses of fraud and failure of consideration when he executed and delivered the note sued upon. We believe the rule announced in the case of Hunter v. Lanius, 82 Tex. 677, 18 S.W. 201, (1892) and subsequently followed by the Supreme Court of this state in Gaylord Container Division, etc. v. H. Rouw Company, Tex., 392 S.W.2d 118, is controlling in determining the question of whether or not a material issue of fact was raised by the evidence in the present case. In both the Hunter and Gaylord cases, as in the present case, the holder brought suit on a note which he claimed to be valid. In the Gaylord case, the Supreme Court reaffirmed the rule announced in the Hunter case, wherein the court held:

" 'Where one executes an obligation in renewal of a note claimed by the holder to be valid, but known to the maker to be fraudulent or without consideration, the latter will be deemed to have freed the transaction of the fraud, and to have waived the want of consideration, and will not be permitted to plead it. So, a note is supported by a sufficient consideration, if executed to secure the abandonment of a suit brought to enforce a doubtful right, or in compromise of a disputed claim made in good faith, though it ultimately appears that the

claim was without merit. Keefe v. Vogle, 36 Iowa 87; Babcock v. Hawkins, 23 Vt. 561; 1 Daniel, Neg.Inst. § 205; 1 Add.Cont. § 14.' "

Although Dr. Maddox denies in his affidavit that he had any actual knowledge of the fraud until after he had executed the renewal note on December 8, 1958, he admits in his affidavit that he wrote the letter to Mr. Harris on December 5, 1957, in which he included the title opinions showing that Oldham had not in fact conveyed him the title to the minerals under the Cooper-Neel tract. Therefore, we believe the evidence conclusively shows that he either had knowledge of the alleged fraud or had knowledge of facts that would lead a reasonably prudent person to discover the alleged fraud on December 5, 1957, approximately one year before he executed the renewal note. He waited some three years after the execution of the note involved herein before asserting his right to rescind for fraud and failure of consideration. We therefore conclude that defendant waived his defense based upon fraud and failure of consideration.

We now turn to the question of whether the evidence presents a genuine issue as to a material fact upon the cross action for damages for breach of contract, or for damages for actionable fraud. Oldham contends that any cause of action which Maddox might have had by reason of breach of contract or for actionable fraud is barred by the statute of limitations. We think this contention must be sustained.

▪ The limitations statute provides that all actions founded upon a written contract must be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterwards. Article 5527, Vernon's Ann.Tex.Civ.St. Limitations commence to run on a breach of the contract or when the claimant has notice of sufficient facts to place him on notice of the breach thereof. Thus, in suits for breach of contract where a party seeks to avoid limitations because of

**382**

fraud, he must show not only the fraud, but must show that after exercising ordinary diligence, he failed to discover the existence of a cause of action. Limitations will commence when he knows or should have known of the breach. Owen v. King, 130 Tex. 614, 111 S.W.2d 695, 114 A.L.R. 859; Boyd v. Knox, (Tex.Civ.App.) 273 S.W.2d 81; 37 Tex.Jur.2d, Sec. 62, page 189.

A review of the evidence shows that when Maddox wrote the letter to Mr. Harris on December 5, 1957, enclosing the title opinions showing that he did not have title to the minerals of the Copper-Neel tract, he either knew or by the use of reasonable diligence should have known of the breach of the contract and therefore limitations commenced on that date. He did not file his cross action until March 17, 1962, which was more than four years after his cause of action on the written contract accrued. Therefore, any cause of action he might have had for breach of contract was barred by the four-year statute of limitations.

If the pleadings and affidavits are sufficient to show that Maddox is asserting a cause of action for damages for actionable fraud, we believe such action would be barred by the two-year statute of limitations. Article 5526, V.A.T.S.

Here again the evidence shows that on December 5, 1957, Dr. Maddox had before him a title opinion showing that the deed failed to convey the mineral interest under the Copper-Neel tract. We think such evidence conclusively shows that he either knew or by the exercise of reasonable diligence should have known of the fraud on that date. Certainly, he had knowledge of facts which would lead a reasonably prudent person to discover the fraud. Knowledge of facts which would lead to the discovery of fraud is, in law, knowledge of fraud itself. White v. Bond, Tex., 362 S.W.2d 295.

It thus appearing that the plaintiff discharged its burden of showing that there was no genuine issue of a material fact upon the whole case, we think the matter was properly disposed of by summary judgment.

Accordingly, the judgment of the trial court is affirmed.